741 So.2d 649 (1999)
In re Nicolas ESTIVERNE.
No. 99-B-0949.
Supreme Court of Louisiana.
September 24, 1999.
Charles B. Plattsmier, Baton Rouge, Counsel for Applicant.
Nicolas Estiverne, New Orleans, pro se.
Vernon Palmer Thomas, New Orleans, for respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.[*]
This attorney disciplinary proceeding arises from two sets of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Nicolas Estiverne, an attorney licensed to practice law in the State of Louisiana.

UNDERLYING FACTS

94-DB-017

Count I
Respondent represented Kenneth Muse in a worker's compensation matter entitled Muse v. Ward Lumber Co., Docket No. 91-02208 in the Office of Worker's Compensation. Although respondent's client initially received a favorable ruling in the case, the hearing officer presiding over the matter granted a new trial. Respondent thereafter wrote a letter to the hearing officer, accusing him of disregarding "all the laws in the book to satisfy your own fantasy" and suggesting that he "refrain from continuing the kind of rape you have been perpetrating against the law."[1]
*650 The ODC alleges respondent's conduct in this matter violated Rules 3.5(c) (engaging in conduct intended to disrupt a tribunal), 4.4 (respect for rights of third persons), and 8.2(a) (making a false statement concerning the integrity of a public legal officer) of the Rules of Professional Conduct.

Count II
In connection with the matter which is the subject of Count I, respondent, on behalf of his client, filed a "Petition for Damages for Violation of Civil and Constitutional Rights, Conspiracy to Violate Rights and Intentional Infliction of Mental Distress and Conspiracy to Deprive Full Pursuit of Happiness and Enjoyment of Life," suit number 391,316 on the docket of the 19th Judicial District Court, against the hearing officer and the chief worker's compensation hearing officer. Respondent asserted in the suit that the defendants conspired to commit fraud by destroying the record in the worker's compensation case at issue.
The ODC alleges respondent's conduct in this matter violated Rule 3.1 of the Rules of Professional Conduct (bringing a proceeding without a good faith basis).

96-DB-080
Respondent was counsel for the plaintiff in Gretchen Regis v. Transit Management of Southeast Louisiana, case number 94-12058 on the docket of the Civil District Court for the Parish of Orleans. Robert Bonnaffons, counsel for the defendant, went to respondent's office to conduct a deposition of respondent's client. During the deposition, respondent accused Mr. Bonnaffons of "leaning towards" making racial comments. Mr. Bonnaffons stated that he had no intention of making racial comments, but that if respondent continued to accuse him, the two of them should "step outside" and settle the matter "man to man." The second deposition that was scheduled for that day was canceled, and both attorneys dictated a proces verbal for the record. Respondent then left the room, and Mr. Bonnaffons and the court reporter prepared to leave. A few minutes later, respondent reappeared in the office with a handgun. According to Mr. Bonnaffons, respondent threatened to kill him.[2]
The ODC alleges respondent's conduct in this matter violated Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

DISCIPLINARY PROCEEDINGS

Formal Charges
After conducting an investigation into the matter involving the worker's compensation *651 hearing officer, the ODC filed formal charges against respondent in 94-DB-017. After the hearing committee issued its findings and recommendations, the matter was stayed pending the filing of new charges in 96-DB-080 for the handgun incident. Subsequently, both sets of formal charges were consolidated.

Hearing Committee Reports
In 94-DB-017, the hearing committee found the allegations of Count I involving the letter were proven. The committee found the letter to the hearing officer offensive, and concluded that respondent's purpose was to attack and embarrass the hearing officer, in violation of Rule 4.4 of the Rules of Professional Conduct.[3] However, the committee dismissed the charges in Count II, relating to the filing of a frivolous lawsuit. The committee found that the question of whether the suit was frivolous and without basis could best be handled by the trier of fact in that action.
The committee noted the following aggravating factors: prior discipline[4] and substantial experience in the practice of law. It found two mitigating factors: foreign background[5] and the absence of a selfish or dishonest motive. The committee determined the tone of the letter was discourteous but agreed that suspension is too harsh. Therefore, it concluded that a reprimand is the appropriate sanction.
In 96-DB-080, the hearing committee heard the testimony of a number of witnesses to the handgun incident.[6] Based on this testimony, the hearing committee made the following findings of fact:
1. An unprofessional argument and verbal altercation occurred between Mr. Bonnaffons and Mr. Estiverne after the conclusion of Gretchen Regis' deposition.
2. The determination of who instigated the altercation between the attorneys is irrelevant because the *652 altercation and confrontation ended when Mr. Estiverne left his office.
3. Mr. Estiverne returned to his office with a hand gun approximately three minutes after he left.
4. Mr. Bonnaffons and the court reporter took a reasonable time within which to gather their belongings and equipment and attempt to leave Mr. Estiverne's office.
5. Mr. Estiverne returned with his hand gun in order to threaten and intimidate Mr. Bonnaffons.
6. It was reasonable for Mr. Bonnaffons to assume that the hand gun was loaded.
7. Mr. Estiverne threatened and intimidated Mr. Bonnaffons with the hand gun.
8. Mr. Estiverne's life was not in danger at the time he brought the hand gun into his office.
9. When Mr. Estiverne returned to his office with the hand gun, he became the aggressor in the previously diffused confrontation between him and Mr. Bonnaffons.
10. Mr. Estiverne has two prior public reprimands and an admonition. One of the reprimands involved his use of threats against two doctors.
With regard to whether respondent actually pointed the gun at Mr. Bonnaffons and pulled back the hammer, the committee concluded that the ODC failed to sustain its burden of proof with respect to this portion of the allegations. Nevertheless, the committee found respondent's use of a weapon violated Rule 4.4 and Rule 8.4 of the Rules of Professional Conduct,[7] since it was prejudicial to the administration of justice and served no useful purpose except to intimidate and violate the legal rights of the complainant.
After reviewing the facts, the committee concluded the baseline sanction for respondent's conduct is suspension. Pursuant to the ABA's Standards for Imposing Lawyer Sanctions, the committee found the following aggravating factors: prior discipline, pattern of misconduct, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. The committee indicated there are no mitigating factors.
The committee found respondent had used threats and intimidation in the past, and he was admonished for that conduct. Further, the committee noted that in past disciplinary proceedings, like this one, respondent has attempted to use his cultural background as a defense of his actions. The committee indicated it was "not impressed" with such testimony. Moreover, it noted that respondent refuses to accept any responsibility for his actions, instead attempting to "justify" his behavior throughout the course of his testimony. The committee stated it had "no doubt" that respondent would do the same thing again if a similar situation were to arise. Accordingly, the committee recommended that respondent be suspended from the practice of law for a period of six months.
The ODC objected to the committee's findings in 94-DB-017, and it objected to the sanction recommended by the committee following its consideration of the formal charges in 96-DB-080. Respondent objected to the sanctions proposed by both hearing committees.

Disciplinary Board Report
As to the charges in 94-DB-017, the disciplinary board found that Count II was properly dismissed. It likewise concluded *653 that the misconduct alleged in Count I was not proven by clear and convincing evidence, and recommended Count I be dismissed as well.[8] With respect to the charge in 96-DB-080, the disciplinary board adopted the ten factual findings of the hearing committee, and concurred with the finding that respondent violated Rules 4.4 and 8.4(a), (b) and (d) of the Rules of Professional Conduct.
The board found respondent violated duties owed to the legal system, the profession, and the public, and that he engaged in knowing and intentional misconduct. The board noted the following aggravating factors: prior discipline, pattern of misconduct, refusal to acknowledge wrongdoing, and substantial experience in the practice of law. The board found two mitigating factors: lack of selfish or dishonest motive and cooperative attitude towards the disciplinary process.
Although the board agreed with the findings of the hearing committee, it disagreed with the recommended sanction. The board therefore recommended that respondent be suspended from the practice of law for a period of one year, with all but sixty days deferred, with conditions. Following reinstatement, the board recommended respondent be placed on probation, with conditions, for the remainder of the deferred portion of his suspension. The board also recommended respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court's judgment until paid.
Both respondent and the ODC filed an objection to the disciplinary board's recommendation, and the matter was set on this court's docket for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
After reviewing the record, we find the charge relating to the letter written by respondent to the worker's compensation hearing officer was proven by clear and convincing evidence. The hearing committee made a finding of fact that the letter was intended to attack and embarrass the hearing officer, and concluded such conduct violated Rule 4.4 of the Rules of Professional Conduct. The record supports such a finding. We find the appropriate sanction for this misconduct is a public reprimand.
As to the charge concerning the filing of the allegedly frivolous lawsuit, our review of the record indicates the ODC failed to prove this charge by clear and convincing evidence. Accordingly, we conclude the hearing committee and disciplinary board reached the correct result in dismissing this charge.
Turning to the final charge, involving the handgun incident, we conclude the findings of fact of the hearing committee are supported by the record. In the hearing committee and in oral argument before this court, respondent placed great emphasis on the fact that Mr. Bonnaffons was the aggressor, and characterized his own acts as merely self-defense. We accept the fact that Mr. Bonnaffons was responsible for initiating the confrontation by encouraging respondent to "step outside" and settle their dispute "man to man." However, when respondent left the room and returned with the gun, he became the aggressor.[9] The hearing committee found *654 that at this point, respondent's intention was to intimidate and threaten Mr. Bonnaffons, and that such actions constituted a violation of Rule 4.4 and Rule 8.4 of the Rules of Professional Conduct. These factual findings are supported by clear and convincing evidence in the record.
In determining an appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass'n v. Guidry, 571 So.2d 161 (La.1990). Based on our review of the jurisprudence, we are unable to find any cases which involve an attorney who has threatened another attorney with a firearm. However, we note that in In re Brown, 95-0817 (La.5/21/96), 674 So.2d 243, we disbarred an attorney convicted of negligent homicide in connection with the shooting death of another person. See also In re McGrath, 98 Wash.2d 337, 655 P.2d 232 (1982) (attorney disbarred after conviction for assault in the second degree resulting from the attorney's intentionally shooting another person outside of a bar).
Obviously, the facts in the instant case are not as egregious as those in Brown, where the victim was shot and killed by the attorney. Nonetheless, respondent's use of a dangerous weapon to threaten Mr. Bonnaffons created a clear potential for harm. Additionally, it is disturbing that respondent has been admonished by this court for harassing and unprofessional behavior in the past, yet he continues to engage in this type of conduct.
The ODC has suggested that a suspension for a period of one year and one day, which will necessitate an application for readmission by respondent, is the appropriate discipline for respondent's misconduct in this charge. Considering all the factors, we agree with the ODC's recommendation. Accordingly, we will suspend respondent from the practice of law for a period of one year and one day for his conduct in connection with the handgun incident.

DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs and oral argument, it is the decision of the court that respondent, Nicolas Estiverne, be publicly reprimanded for the misconduct charged in Count I of 94-DB-017, and that he be suspended from the practice of law for a period of one year and one day for the misconduct charged in 96-DB-080. Count II of 94-DB-017 is dismissed on the ground it was not proven by clear and convincing evidence. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1.
VICTORY, J., dissents.
VICTORY, J., dissenting.
Although I agree with most of the majority's opinion, in my view the record clearly and convincingly establishes that respondent filed a frivolous lawsuit. Therefore, I would sanction him more severely than the majority.
NOTES
[*] Traylor, J. not on panel. Rule IV, Part II, § 3.
[1] Respondent's letter to the hearing officer states in its entirety:

I just received a subpoena Duces Tecum that you have apparently signed on behalf of your defendant Commercial Union Insurance Company. You know or you should have known that discovery cannot be taking place after a case has been lodged with the Court of Appeal. Your jurisdiction is over in this case, although you made it a point to disregard all the laws in the book to satisfy your own fantasy, I suggest that you refrain from continuing the kind of rape you have been perpetrating against the law.
Article 2088 of the Louisiana Code of Civil Procedure defines clearly that you have no more jurisdiction on this case. I am wondering what's really going on?
I would very much appreciate your answer to this letter and please make this letter part of the Kenneth Muse's record that was conveniently misplaced.
[2] Mr. Bonnaffons claims respondent came within four feet of him, pointed the gun at his chest, and cocked the gun by pulling back the hammer. Other witnesses' testimony indicates that although respondent had the gun by his side, he did not actually point the gun at Mr. Bonnaffons. Respondent, who took the position that Mr. Bonnaffons was the aggressor during the incident and that he was acting in self-defense, claims the gun was never loaded, and in oral argument before this court, he claimed the gun is not functional at all. Moreover, respondent claimed he was scared of Mr. Bonnaffons because he knew that Mr. Bonnaffons is a skilled boxer and has a black belt in karate; respondent, on the other hand, was then 51 years old, suffering from high blood pressure, cancer, and diabetes, and was overweight.
[3] Rule 4.4 provides:

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.
[4] Respondent has been disciplined on three previous occasions. In 1987, this court publicly reprimanded him for making harassing telephone calls to two doctors who had examined his client. See Louisiana State Bar Ass'n v. Estiverne, 512 So.2d 417 (La.1987). There we noted:

In a hasty and imprudent reaction to pressure from his client, [respondent] stated his displeasure to the doctors with their medical conclusions and expressed a rash judgment as to the doctors' competency. His imprudent and injudicious behavior added pressure to an already strained relationship between two highly esteemed professionals. This reckless disregard for basic standards of professional conduct warrants some disciplinary action.
However, we recognized there was no dishonesty or deceit and no attempt to bargain with a witness to give false testimony. Moreover, respondent expressed remorse and apologized for his behavior "once he realized the impropriety of his conduct and in that he was not born or raised in this country."
In 1987, respondent was publicly reprimanded a second time, for misconduct involving an unwarranted claim made against a fellow attorney who had filed a complaint against respondent with the Committee on Professional Responsibility.
In August 1990, respondent was admonished for misconduct involving the collection of a fee from a worker's compensation client without obtaining prior approval from the Office of Worker's Compensation.
[5] Respondent was born in St. Marc, Haiti, West Indies. He became a U.S. citizen while serving in the Army between 1969 and 1971. After graduating from a Louisiana law school, he was admitted to the practice of law in Louisiana in 1983.
[6] The hearing committee heard testimony concerning the gun incident from respondent, Mr. Bonnaffons, Laura Geis (the court reporter), Katherine Roberts (respondent's secretary), Alfred Reilly (Ms. Roberts' uncle, who was present on the day of the incident), Gretchen Regis (respondent's client), and Karen Regis (the client's sister, who was also scheduled to be deposed on the day of the incident). Dwight Doskey, an expert in criminal law, testified concerning the defense of self-defense.
[7] Rule 8.4 provides in pertinent part:

It is professional misconduct for a lawyer to:
(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) Commit a criminal act especially one that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(d) Engage in conduct that is prejudicial to the administration of justice[.]
[8] The board, after studying the letter respondent wrote to the hearing officer, found:

The initial reaction to Respondent's use of such terms as "fantasy" and "rape" is to find them offensive. However, upon considering the actual definitions of the terms and Respondent's foreign background, the Board does not find clear and convincing evidence that they are offensive or that their purpose was to attack and embarrass Mr. Voisin.
[9] By way of analogy, La.Code Crim. P. art. 21 provides that "[a] person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict."